Betty J. SHEALY, et. al, Plaintiffs–Appellants,

v.

Patricia J. CALDWELL, et. al, Defendants–Appellees.

No. 99–3330.

United States Court of Appeals, Sixth Circuit.

July 27, 2001.

Before MOORE and CLAY, Circuit Judges, and HOOD, District Judge.[*]

HOOD, District Judge.

Plaintiffs, Betty J. Shealy and Linda Rossman, appeal from the judgment entered by the United States District Court for the Northern District of Ohio. On February 5, 1999, the Honorable Paul R. Matia, granted summary judgment to Defendants. Patricia J. Caldwell, individually and in her official capacity as Clerk of Court of the Crawford County Court of

Common Pleas; Crawford County; Clemens, Nelson & Associates, Inc.; and John Krock, a personnel consultant for Crawford County, in an action brought pursuant to 42 U.S.C. § 1983 and violations of the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution by Plaintiffs Betty J. Shealy and Linda Rossman for termination of employment from the Crawford County Clerk of Courts in January 1997. For the reasons set forth below, we **AFFIRM** the district court's judgment on the issues of denial of due process, equal protection and whether there was a genuine issue of material fact regarding whether Appellee Caldwell acted in an individual capacity. We **REVERSE** the judgment of the district court as to Plaintiffs' § 1983 claim for violation of Plaintiffs' Fourth Amendment Rights as to Defendants Caldwell, Crawford County, and Krock.

## I.  BACKGROUND

### A.  Factual Background

Defendant Caldwell has held the position of Clerk of Crawford County Common Pleas Court ("Clerk of Court") since January of 1985. This is an elected position. The Crawford County Clerk's Office ("Clerk's Office") is divided into two departments: the legal department which handles court documents, and the title department where motor vehicle titles are processed. Plaintiffs Betty J. Shealy and Linda Rossman were appointed as Deputy Clerks of Court by Defendant Caldwell. They worked in the title department. Plaintiff Rossman had worked for Crawford County since 1971 as a Deputy Clerk and had worked under Caldwell since 1985. Plaintiff Shealy began working for Caldwell in 1992. Plaintiffs, as deputy clerks,

[*] The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan, sitting by designation.

were "unclassified employees" under Ohio Rev.Code. § 214.11(A)(10).

Defendant John Krock, is an employee of Defendant Clemans, Nelson & Associates, Inc. ("Clemans, Nelson"). Clemans, Nelson had contracted with Crawford County to provide consulting services on personnel and management matters to Crawford County officials.

In August of 1995, the title department of the Crawford County Clerk's office was relocated to an office in the Southern Lights Shopping Center. At this location, the title department employed three full-time deputy clerks, Betty Shealy, Linda Rossman and Mary Jo Schawber; one floater, Terry Bloomfield; and one supervisor, Tammy Lacey. Schawber, the daughter-in-law of the Crawford County Sheriff, had worked in the title department three years. Bloomfield, a close friend to the daughter of Crawford County Common Pleas Judge Nelfred G. Kimerline, had been employed that year.

In November of 1996, Terry Bloomfield complained to Caldwell about conditions in the title department including harassment by two employees, and that she believed the employees were taking money from the clerk's office. Caldwell conferred with Judge Kimerline about the alleged misconduct. Judge Kimerline then indicated that the matter would be investigated by the Crawford County Sheriff Schawber ("the Sheriff"). Caldwell, Judge Kimerline, and the Sheriff met, and the Sheriff was informed of the allegations. Detective Randy Toth was assigned to investigate the matter. The Sheriff asked Caldwell to provide a list of all of her employees to Toth to aid in the investigation. The Sheriff also suggested that Caldwell contact John Krock of Clemans, Nelson & Associates, a firm contracted to provide consulting services to public officials in personnel and management matters.

Caldwell contacted Krock in November of 1996. Caldwell explained the problems that she was having in the title department, including complaints from the public, money being taken, and inappropriate behavior. Caldwell requested a meeting to discuss the matter with Krock. Krock arranged to meet with Caldwell on November 22, 1996. Caldwell and the Sheriff met with Krock on November 22, 1996. Sometime following the meeting, Caldwell was advised that Lacey and Plaintiff Shealy had become the focus of the investigation. Krock recommended that both Shealy and Lacey be placed on leave with pay while the investigation was pending.

On December 5, 1996, at approximately 11:15 a.m., Caldwell, Krock, Detective Toth and Major Michael Castor accompanied, by one other law enforcement officer, Vicky Logan, from the Sheriff's Department went to the title department. Upon arrival, the officer closed the door, the lights in the lobby were extinguished, and the front door was locked. Krock directed Lacey and Plaintiff Shealy to the front office, where they were handed a notice indicating that they were being placed on paid administrative leave pending the outcome of the investigation. Caldwell instructed Lacey and Plaintiff Shealy to turn in all of their keys to the office, and indicated that they were not to return to the title department until notified. Lacey and Plaintiff Shealy were informed they would receive notice of a predisciplinary hearing date. Shealy asked to leave and proceeded to retrieve her belongings. However, before leaving, Major Castor was directed by Krock to search Shealy's purse. Shealy did not consent to the search. Plaintiff Rossman was informed by Caldwell that she would be in charge of the petty cash fund for the title office until further notice. Caldwell advised the other employees of the title department that further misconduct would not be tolerated.

In a letter dated December 10, 1996, Caldwell ordered Rossman not to discuss the continuing investigation at the title department with anyone other than the officials conducting the investigation. This order was also provided in writing to the other employees of the title office. Despite this cautionary instruction to Rossman, Caldwell learned that Rossman was discussing the matter with members of the public who visited the title department. Caldwell considered Rossman's conduct to be insubordination. Caldwell also learned of an incident which occurred on December 31, 1996, where Rossman refused to do title work for a customer who came into the office near closing time, so another employee did the work for the customer. Caldwell contacted Krock regarding how to proceed with Rossman's discharge for insubordination and discourteous treatment of the public.

In late December of 1996 or early January of 1997, Caldwell claims that Clemans, Nelson recommended that Lacey and Shealy be "instructed" to take polygraph tests in order to "determine the truth as to their conduct at the title office." Caldwell also claims that the polygraph tests were to be used to help determine whether Lacey and Shealy had engaged in "dropping late fees" or had stolen money from the title department for personal gain.[1] On January 10, 1997, Shealy and Lacey submitted to the polygraph examinations. Krock informed Caldwell that the polygraph results indicated that both women had lied about taking money from the title department for personal gain. Not long after taking the polygraph, Lacey resigned from her deputy clerk position. Lacey is not a party to this suit.

Shealy and Rossman were afforded predisciplinary hearings on January 14, 1997.

In a letter dated December 9, 1996, Caldwell informed Shealy that the predisciplinary hearing previously scheduled for December 10, 1996 had been postponed until the investigation was completed. Caldwell noted that Shealy would be informed of a new disciplinary hearing date and the nature of the charges against her. By letter dated January 13, 1997, Shealy was informed of the new date for the predisciplinary hearing and that she would have an opportunity to respond to charges of "discourteous treatment of the public, insubordination, neglect of duty and dishonesty."

Shealy and Rossman were also informed of the charges against them at the hearings. Shealy was charged with (1) discourteous treatment of the public, (2) insubordination, (3) neglect of duty, and (4) dishonesty. Rossman was charged with (1) discourteous treatment of the public, (2) insubordination, (3) neglect of duty, and (4) failure of good behavior. Shealy was told that the polygraph test indicated deception when Shealy was asked whether she had taken money for personal gain from the title department. Caldwell claims that during the hearing, Rossman admitted that she had discussed the investigation contrary to Caldwell's instruction and that she had been previously warned about being discourteous to members of the public.

Following the hearings, Caldwell consulted with Krock. Caldwell terminated Rossman on January 14, 1997. Rossman's "Order of Removal" states with specificity the reasons for her termination as follows:

Discourteous treatment of the public; in that you have used profanity in front of customers and staff. You refused to wait on a customer on December 31, 1996 at closing time.

1. The term "dropping late fees" is the title department slang for the practice of collecting a $5.00 late fee from customers who did not timely transfer a motor vehicle title, and then not reporting the $5.00 fee to the County.

Insubordination; in that you received a written order on December 10, 1996 not to discuss' the pending discipline problems with co-workers or with anyone. You admitted to doing so on numerous occasions.

Dishonesty; in that you have admitted to collecting several $5.00 "late fees" from customers and not reporting it to the County.

The "dishonesty" charge stemmed from Rossman's admission to Toth that she engaged in the practice of "dropping late fees" while under the supervision of the previous Clerk of the Court. Rossman claimed that although she had engaged in this practice several years ago, she no longer did so. She also claimed that the "dropped fees" were used to make up shortages in the cash drawers or for petty cash, and that she never used the fees for personal gain. Thereafter, Rossman wrote a letter to the County categorically responding to the reasons given for her termination.

Caldwell also terminated Shealy on January 14, 1997, based upon her belief that Shealy had stolen money from the title department. Caldwell signed Shealy's "Order of Removal" on January 14, 1997, which provides the reasons for discharge as follows:

Discourteous treatment of the public; in that you have used profanity in front of customers and staff.

Insubordination; in that you were given a direct order by the Clerk not to use profanity in the office; and you did not answer questions truthfully, as ordered to do both in the predisciplinary conference and the polygraph examination.

Dishonesty; in that on numerous occasions you collected a $5.00 "late fee" from customers and did not report it to the County. Illegally issued a duplicate title.

Articles appeared in local newspapers regarding the events which occurred at the title department that specifically mentioned Shealy and Rossman by name and the charges against them. Both Shealy and Rossman claim that since their terminations from the title department they have been unable to obtain employment despite several attempts to do so. Shealy and Rossman did not request any further hearings regarding their terminations.

## B. Procedural Background

On January 6, 1998, Shealy and Rossman filed a nine-count complaint against Defendants in the district court. Count I and Count II of the complaint were brought under 42 U.S.C. § 1983, and respectively alleged deprivation of Plaintiffs' rights to "due process of law guaranteed them under the Fourth, Fifth and Sixth Amendments to the United States Constitution, as incorporated within and applied to state and local governments through the due process clause of the Fourteenth Amendment to the United States Constitution," as well as deprivation of Plaintiffs' right to "equal protection of the law guaranteed them under the Fourteenth Amendment to the United States Constitution." Counts III through VIII were brought under Ohio common law and alleged wrongful discharge, false arrest, false imprisonment, intentional infliction of emotional distress, invasion of privacy, and defamation respectively. Count IX, entitled "Age Discrimination," failed to specify under what law the claim was being made, and instead simply alleged that "Plaintiffs were replaced in their respective positions by an individual or individuals under the age of forty (40)."

From November 2, 1998 through November 16, 1998, Defendants filed motions for summary judgment. Specifically, Caldwell filed a motion for summary judg-

ment in her individual capacity, Crawford County and Caldwell filed motions for summary judgment in their official capacity; and Defendants Clemans, Nelson & Associates, Inc., along with Krock, filed a motion for the same. Plaintiffs filed responses in opposition to the Defendants' motions. On February 5, 1999, Judge Matia entered a Memorandum Opinion and Order granting Defendants' motions for summary judgment and dismissing Plaintiffs' case against them. That same day, Judge Matia entered a judgment in favor of Defendants on Plaintiffs' federal claims, and dismissed the pendent state law claims without prejudice.

Plaintiffs filed a motion for reconsideration of the district court's memorandum opinion and order on February 19, 1999. The district court denied Plaintiffs' motion, and Plaintiffs filed a timely notice of appeal with this Court.

## II. JURISDICTION

This action was brought pursuant to a federal question involving claims under the United States Constitution. The district court had subject matter jurisdiction over causes of actions brought pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331 because the case presented a federal question. The district court's entry of summary judgment is a final decision which this court may review pursuant to 28 U.S.C. § 1291.

## III. STANDARD OF REVIEW

This Court reviews a district court's order granting summary judgment *de novo*. *Equitable Life Assur. Soc'y v. Poe*, 143 F.3d 1013, 1015 (6th Cir.1998). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact as to an essential element of the non-moving party's case." *Street v. J.C. Bradford & Co.*,

886 F.2d 1472, 1476 (6th Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Determination of whether a fact is "genuine" requires consideration of the applicable evidentiary standard. *Id.* A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson*, 477 U.S. at 248. Once the moving party satisfies its burden, "the burden shifts to the nonmoving party to set forth specific facts showing a triable issue." *Matsushita Elec. Indus. Co v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## IV. ANALYSIS

### A. Denial of Due Process

#### 1. *Property Interest/Future Employment*

The district court did not err in granting Defendants' summary judgment on Plaintiffs' § 1983 claims for denial of due process.

Plaintiffs' arguments on appeal as to their claims against Caldwell in her official capacity; Crawford County; and Clemans, Nelson and Krock for denial of Plaintiffs' right to due process of law are limited to substantive due process loss of a property interest. Plaintiffs argue on this issue that they were denied a name clearing hearing. Plaintiffs, as unclassified employees, contend they had a property interest in future employment which was denied because they were not allowed a name clearing hearing. They claim future employment opportunities were foreclosed because Defendants' action stigmatized their reputation in the community. *See* Plain-

tiffs' Brief on appeal at 18 (citing *State ex rel. Kilburn v. Guard*, 5 Ohio St.3d 21, 448 N.E.2d 1153 (1983); *State ex rel. Trimble v. State Bd. of Cosmetology*, 50 Ohio St.2d 283, 364 N.E.2d 247 (1977)).

In support of their claim, Plaintiffs make three claims as follows:

First, appellant should not have been given a predisciplinary hearing. They were unclassified employees and as such not entitled to one. Second, the only reason they were given a predisciplinary hearing was ... because Clemans, Nelson and Associates were well aware of the Memo that each employee signed and was signed by Patricia Caldwell because a copy was placed in each employee [sic] personnel file which they obtained. (R.38, Caldwell, Depo., APX 516) Clemens, Nelson and Associates knew or reasoned that this Memo was tantamount to a modification of appellants' employment terms and needed to find a way to terminate them without having to comply with the process outline in the Memo. Thus, they gave appellants a "sham" hearing and called it a disciplinary hearing.

Appellants contend that because of this predisciplinary hearing which solidified allegations of insubordination, dishonesty, theft, dereliction of duties and so forth, they were deprived of their liberty right as recognized by the United States Supreme Court in *Board of Regents, supra*, and adopted by the Ohio Supreme Court, to future employment due to stigmatization that result from allegations and findings in the predisciplinary hearings and subsequent Orders of Termination. The allegations alleged in their predisciplinary hearing along with the subsequent Orders of Termination were placed in their personnel files which is accessible to the public, and which in this case was released directly to the media by appellee Caldwell. (R. 39, Caldwell Depo., APX 516)

Both appellants have presented unrefuted testimony and evidence that they could not obtain and/or retain future employment due to the allegations and findings resulting from these predisciplinary hearings.

Therefore, appellants submit that the Memorandum of Opinion and Order of the District Court is clearly erroneous as a matter of law and should be reversed with this matter being remanded for trial.

See Plaintiffs' Brief on Appeal at 18 –20.

■ Plaintiffs' concession that they were unclassified employees, forecloses any due process claims raised in their complaint. See J.A. at 18, Complaint at ¶ 60("Defendants ... Deprived Plaintiffs of liberty and property ...."). "Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). It is well settled that unclassified employees do not have a property interest in continued employment. See Ohio Rev.Code §§ 124.11, 124.14; *Christophel v. Kukulinsky*, 61 F.3d 479, 482 (6th Cir.1995).

## 2. *Loss of Liberty/Reputation*

■ Plaintiffs' substantive due process claim for loss of their liberty interest also fails. "[A] person's reputation, good name, honor, and integrity are among the liberty interests protected by the due process clause of the Fourteenth Amendment." *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir.1989). A deprivation of any of these interests "must be accompanied by notice and opportunity to be heard to re-

fute any charges against that person." *Id.* This Court identified five elements a plaintiff must show when making such a claim in *Ludwig v. Board of Trustees of Ferris State Univ.*, 123 F.3d 404, 410 (6th Cir. 1997):(1) The stigmatizing statements must be made in conjunction with the plaintiff's termination from employment ....; (2) A plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance....; (3) the stigmatizing statements or charges must be made public; (4) The plaintiff must claim that the charges made against him were false; and (5) The public dissemination must have been voluntary. *Id.* If the plaintiff satisfies these five elements, she is entitled to a name-clearing hearing if such a hearing has been requested. *Id.* Only after the plaintiff has shown the five elements, requested a name clearing hearing, and the request for hearing has been denied can a plaintiff allege that she suffered a deprivation of liberty without due process of law. See *id; see* also *Brown v. City of Niota, Tenn.*, 214 F.3d 718, 723 (6th Cir.2000).

■ In this case, even if Plaintiffs can establish the *Ludwig* elements, Plaintiffs have never requested a name clearing hearing nor have they alleged they were denied such a request. Plaintiff's failure to request a name clearing hearing is fatal to their claim. See *Ludwig*, 123 F.3d at 411 ("We need not determine whether any or all of the disseminated statements deprived plaintiff of a liberty interest because we conclude that plaintiff failed to sufficiently apprise the University of his desire for a name-clearing hearing following dissemination of the statements."); see also *Brown*, 214 F.3d at 723 ("Because Plaintiffs must request a name-clearing hearing and be denied this hearing before they have suffered a deprivation of their liberty interest without due process of law, the district court was correct in granting the Defendants' summary judgment motion on the Plaintiffs' claims that they were deprived of liberty without due process of law.").

■ In any event, Plaintiffs were afforded the opportunity at the predisciplinary hearing to respond to the charges made against them and to clear their names. See *Chilingirian*, 882 F.2d at 206 (noting that a name clearing hearing "need only provide an opportunity to clear one's name and need not comply with formal procedures to be valid").

The district court did not err in granting summary judgment in favor of Defendants on the denial of due process claim.

## B. Equal Protection Claim

Plaintiffs also claim that the district court erred by granting summary judgment on Plaintiffs' § 1983 claim for denial of equal protection. The district court found that Plaintiffs were not members of a discrete and insular minority and that Plaintiffs had failed to allege any distinctions between themselves and other employees. The court concluded that Plaintiffs' claims failed as a matter of law. Plaintiffs argue that their membership in a discrete and insular minority is not required in order to maintain a § 1983 claim for denial of equal protection. Plaintiffs claim that they need only show the discriminatory administration of a law that is neutral on its face, by showing that the government acted with a discriminatory intent or purpose. *Charles v. Baesler*, 910 F.2d 1349 (6th Cir.1990). Plaintiffs also claim that they presented sufficient evidence to survive summary judgment by showing that Defendants were aware their actions were wrongful as Plaintiffs were targeted and terminated for misconduct for which other employees were not terminated.

■ Plaintiffs base their equal protection claim upon selective enforcement and therefore must show that they were subjected to selective enforcement of the law "based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962). The Seventh Circuit explained in *Huebschen v. Department of Health and Social Services* that;

> [a] person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual. The decision maker [must have] selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group.

716 F.2d 1167, 1171 (7th Cir.1983)(internal quotation marks omitted). This premise was recognized in this circuit in *Charles,* where this court wrote "[i]n short, Charles' equal protection claim boils down to the assertion that 'he was treated one way and everyone else another,' which 'has never been thought to raise an equal protection claim.'" *Charles,* 910 F.2d at 1357 (quoting *Wagner v. Higgins,* 754 F.2d 186, 194 (6th Cir.1985)(Contie, J., concurring)).

Plaintiffs neither alleged or presented any evidence that they were subjected to selective enforcement of the law "based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler,* 368 U.S. at 456.

The district court did not err in granting Defendants summary judgment on Plaintiffs' § 1983 claims for denial of equal protection.

## C. Caldwell In An Individual Capacity

The district court did not err in granting Caldwell's motion for summary judgment on Plaintiffs' § 1983 claims brought against Caldwell in her individual capacity.

The district court found that Plaintiffs have not alleged anything in their complaint that concerned an action taken by Caldwell as an individual. The court also found that Plaintiffs' claims that Caldwell acted outside the scope of her duties as defined under Ohio Rev.Code § 2303.26, were insufficient because they were made in response to Caldwell's motion for summary judgment and a "legal memorandum is not evidence and cannot by itself create a factual dispute sufficient to defeat a summary judgment motion." (J.A. at 29.)

Plaintiffs argue that Caldwell is not immune from individual liability under Ohio Rev.Code § 2744.03 because she acted outside the scope of her official duties when she authorized law enforcement officers to lock employees inside the clerk's office, authorized the officer's search of Shealy's purse, and targeted Plaintiffs specifically for termination.

■ Plaintiffs' complaint contains no allegations that Caldwell acted outside the scope of her official duties. In addition, during their deposition testimony, Plaintiffs each stated that Caldwell was acting in her official capacity when she performed the acts for which Plaintiffs complain. Plaintiff Rossman testified as follows:

Q ... Can you point me to anywhere in this document that you are alleging any conduct on behalf of Patricia Caldwell in her official capacity.

A I don't know.

Q ... Do you know why you named her individually in this lawsuit?

A Because she was the one that terminated my employment.

Q Did she terminate you as an individual or did she terminate you as Patricia Caldwell, Clerk of the

Common Pleas Court of Crawford County?

Q All right.

A As the Clerk.

J.A. at 1186—87, Deposition Testimony of Rossman.

Plaintiff Shealy testified as follows:

Q All right. I would like you to take a look at Paragraph 26 of your Complaint. Do you agree that Mrs. Caldwell placed you on paid administrative leave from your position pending a disciplinary conference?

A Yes, I do.

Q And that's reflected in Paragraph 26 of your Complaint?

A Yes.

Q Okay. Mrs. Caldwell did that in her capacity, in her official capacity as Clerk of Court?

. . . . .

A Yes.

Q Did she do that in her individual capacity as Patricia Caldwell?

A I have no idea.

Q That's fine then. Let's look at Paragraph 27 of your Complaint. In that one you state, "On or about December 5, 1996 Plaintiff Shealy was advised in writing by Defendant Caldwell that she would be informed of the charges against her on or before 9:00 a.m. on Monday, December 9, 1996." Is that a correct statement from your Complaint?

. . . . .

A Yes.

Q And did Mrs. Caldwell make that in her—make that advice to you in writing in her official capacity as Clerk of the Court of Common Pleas?

A Yes.

*See* J.A. at 1332–33, Deposition Testimony of Shealy. Plaintiffs have presented no evidence and cited no legal authority to support their claim that Caldwell's acts were outside her official capacity as Clerk of Courts. The district court did not err in dismissing Plaintiffs' claim against Caldwell in her individual capacity. See *Celotex Corp.*, 477 U.S. at 322–23; *Matsushita Elec., Indus. Co.* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 ("[O]nce the moving the party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.")

## D. Fourth Amendment

### 1. *Notice*

■ Plaintiffs contend that the district court erred in granting Defendants' summary judgment as to Plaintiffs' § 1983 claim for violation of Plaintiffs' rights under the "Fourth ... Amendment [] to the United States Constitution, as incorporated within and applied to the state and local governments through the due process clause of the Fourteenth Amendment to the United States Constitution" on the basis that Plaintiffs failed to assert a Fourth Amendment violation in their Complaint. (J.A. at 18. Plaintiffs' Complaint at ¶ 59.) Plaintiffs argue that the district court erred by not recognizing their claim for unreasonable searches and seizures under the Fourth Amendment and that the district court erred by concluding that Plaintiffs' claim under the Fourth Amendment failed as a matter of law.

The district court erred in interpreting Plaintiffs' claim and erred in dismissing the claim as a matter of law. Federal Rule of Civil Procedure 8(a) states that

[a] pleading which sets forth a claim for relief whether an original claim, counterclaim, cross claim, or third party claim shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain

statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks.

Plaintiffs are only required to give Defendants fair notice of a 42 U.S.C. § 1983 alleging violation of Plaintiffs' Fourth Amendment rights in their complaint. *Starzyk v. McKinney*, No. 87–1238, 1987 WL 25901, at *1 (6th Cir. Dec. 15, 1987)(unpublished).

Counts I and II of Plaintiffs' nine-count complaint are the only two counts brought under 42 U.S.C. § 1983. Count I of the complaint entitled "Deprivation of Due Process of Law," reads as follows:

## COUNT ONE: DEPRIVATION OF DUE PROCESS OF LAW

56. The allegations of Paragraphs 1 through 55 are incorporated by reference as if fully restated herein.

57. Plaintiffs bring this claim under 42 U.S.C. section 1983.

58. Each and every act of Defendants at all times relevant to this lawsuit was undertaken by authority of and under color of state law.

59. The acts and omissions of Defendants described herein violated Plaintiffs due process of law guaranteed them under the Fourth, Fifth and Sixth Amendments to the United States Constitution as incorporated within and applied to state and local governments through the due process clause of the Fourteenth Amendment to the United States Constitution.

60. The acts and omissions of Defendants described herein deprived Plaintiffs of liberty and property, including but not limited to their reputation and their employment, without due process of law in violation of the Fourteenth amendment of the United States Constitution.

61. As a result of Defendants' actions and omissions, Plaintiffs have been damaged.

(J.A. at 18). In addition, Paragraph 8 of Plaintiffs' complaint, under the heading of "Jurisdiction and Venue," states that "Plaintiffs' federal claims arise under due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States."

In Plaintiffs' response in opposition to Defendants' motion for summary judgment, Plaintiffs argue as follows:

Defendants Caldwell and Crawford County violated Plaintiffs' Fourteenth Amendment right to due process when they deprived them of the freedom to leave. On December 5, 1996, Defendants Pat Caldwell, John Krock, agent of Defendant Pat Caldwell and agents of Crawford County, (three law enforcement officers) arrived at the Crawford County Title Department. Once there, Major Castor locked and stood in front of the door. Not one of the defendants or law enforcement officers explained to Plaintiffs [sic] that they could leave at anytime or indicated exactly why three law enforcement officers, one of whom was in full uniform with a gun and handcuffs and standing in by the locked front exit, were present.

Substantive due process "protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action[.]" *Gutzwiller v. Fenik*, 860 F.2d 1317, 1328 (6th Cir. 1988). Although state-created rights *do* not generally rise to the level of a "fundamental rights," substantive due process rights are created by the Constitution. *Sutton, et al. v. Cleveland Board of Education, et. al.*, 958 F.2d 1339 (6th Cir.1992).

(J.A. at 268–69, Memorandum Contra Motion for Summary judgment of Defendants

Crawford County and Patricia J. Caldwell, Clerk of Courts).

Count I, ¶ 59 of Plaintiffs' Complaint supplied sufficient notice of Plaintiffs' intent to raise a Fourth Amendment Claim against Defendants. The facts set out by the Plaintiffs also provide notice of the Fourth Amendment claim.

### 2. Search

■ The Fourth Amendment prohibits unreasonable searches and seizures and protects a person's "reasonable expectation of privacy" from arbitrary official action. *Camara v. Municipal Court of San Francisco*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). A seizure of property occurs when "there is some meaningful interference with an individual's possessory interest in the property." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). Factors that courts consider in determining if a person has a reasonable expectation of privacy in property held by another include whether that person claims an ownership or possessory interest in the property and whether he has established a right or taken precautions to exclude others from the property. See *Rawlings v. Kentucky*, 448 U.S. 98, 105–06, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980).

Plaintiff has a possessory interest in her purse. The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches...." *United States v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). It is beyond doubt that society recognizes that an expectation of privacy in purses is reasonable. *United States v. Monclavo—Cruz*, 662 F.2d 1285, 1287 (9th Cir.1981). There is no dispute that Major Castor

searched Shealy's purse without her consent. No search warrant had been obtained. A genuine issue of material fact arises regarding whether the warrantless search of Shealy's purse was unreasonable. Plaintiff Shealy's claim for unreasonable search of her purse remains.

### 3. Seizure

The officers locked the Plaintiffs inside an office of the title department. A person is seized when government actors have "by means of physical force or show of authority, ... in some way restrained the liberty of a citizen." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). A seizure by show of authority occurs "if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

On December 5, 1996, Caldwell and Krock, accompanied by three law enforcement officers from the Sheriff's Department including Detective Toth and Major Michael Castor, went to the title department. Upon arriving, Caldwell and Krock turned off the lights in the lobby and locked the front door. Major Castor was wearing his uniform. Plaintiffs also testified that they did not believe that they were free to leave. Given that the officers were in their uniforms and the lights were turned off, there is a genuine issue of material fact regarding whether in view of the circumstances surrounding the incident, Plaintiffs believed that they were not free to leave and therefore were subject to seizure. Plaintiff Shealy's claim of unlawful seizure remains.

### 4. County

■ A section 1983 action may not be premised upon respondeat superior, therefore, Crawford County is dismissed from the suit. Plaintiffs have not alleged

that the county maintains a policy, custom or practice regarding its search and seizure procedures which is unconstitutional. *City of Canton v. Harris,* 489 U.S. 378, 387, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The individual officers are not a party to the suit.

### V. CONCLUSION

For the reasons set forth herein, we **AFFIRM** the judgment of the court as to the due process and equal protection claims. We **REVERSE** the judgment of the court as to the Fourth Amendment claim and remand the matter for further proceedings in accordance with this Opinion.