**Horace Thomas LUDWIG, Plaintiff–Appellant,**

v.

**BOARD OF TRUSTEES OF FERRIS STATE UNIVERSITY, et al., Defendants–Appellees.**

No. 96–2020.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 4, 1997.

Decided Aug. 18, 1997.

Arthur R. Przybylowicz (argued and briefed), White, Przybylowicz, Schneider & Baird, Randie K. Black, Okemos, MI, for Plaintiff–Appellant.

Scott E. Dwyer (briefed), Frederic N. Goldberg (argued and briefed), Mika, Meyers, Beckett & Jones, Grand Rapids, MI, Kevin A. Rynbrandt, Varnum, Riddering, Schmidt & Howlett, Grand Rapids, MI, for Defendants–Appellees.

Before: KENNEDY, CONTIE and COLE, Circuit Judges.

KENNEDY, Circuit Judge.

Plaintiff, Horace Thomas Ludwig, appeals from the District Court's order dismissing his complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure in this action under 42 U.S.C. § 1983 challenging actions taken by Ferris State University in

connection with plaintiff's suspension and termination from his position as the men's basketball coach at the University. For the reasons set forth below, the judgment of the District Court is AFFIRMED.

## I.[1]

The events leading to the filing of the instant action began on May 3, 1995, when a student and basketball player at Ferris State University in Big Rapids, Michigan filed an Affirmative Action Complaint with the University's Affirmative Action Office alleging that Ludwig, the head coach of the men's basketball team at the University and an at-will employee of the University, discriminated against him on the basis of his national origin.[2] Shortly thereafter, the President of the University, William Sederburg, appointed a three member committee to investigate the allegations of the student's complaint. In June and July of 1995, the committee interviewed several witnesses in connection with the student's complaint against Ludwig. The committee included in their investigation an interview with the plaintiff on July 21, 1995. Plaintiff was interviewed for three and one half hours without an attorney despite plaintiff's request to have counsel present. During the questioning, the student's complaint was read to Ludwig and inquiry was made regarding the subject of the complaint as well as other aspects of Ludwig's performance as coach of the basketball team. At the conclusion of the interview, Ludwig was instructed not to discuss the matter with students or staff of the University.

On September 15, 1995, the committee issued specific findings regarding the complaint and other aspects of Ludwig's performance; Ludwig received a copy of the findings on September 18, 1995. Plaintiff also received a memorandum which included a second copy of the student's complaint, a description of the investigative process, and the names of certain witnesses with summaries of their testimony. Plaintiff was provided an opportunity to, and did indeed, respond to the findings in writing on September 27, 1995. In this response, plaintiff alleged that the investigation conducted by the University denied him due process of law.

On October 18, 1995, Ludwig was advised by Richard Duffett, the Associate Vice President for Administration and Finance at the University, and Larry Marfise, the Director of Athletics at the University, via memorandum that they were of the tentative view that the committee's findings were supported by the record and that plaintiff could be subjected to discipline including suspension or termination. Marfise and Duffett provided Ludwig an opportunity to respond to their memorandum and invited Ludwig to attend a meeting with them. Ludwig responded in writing on October 23, 1995, and on October 24, Ludwig and his counsel met with Duffett and Marfise. Prior to the October 24 meeting, the committee provided plaintiff with a full transcript of his questioning by the committee and reminded Ludwig's counsel that he was prohibited from contacting staff or students regarding the investigation.

On November 10, 1995, the General Counsel for Ferris State University, Scott Hill–Kennedy, informed plaintiff's counsel that the President of the University, William Sederburg, would shortly announce his decision; accordingly, Hill–Kennedy afforded Ludwig the opportunity to resign from his position as head coach. Hill–Kennedy denied Ludwig's request to meet with Sederburg; however, Ludwig submitted a written statement to

1. Because we are reviewing the dismissal of an action under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the following facts are derived from the plaintiff's complaint and are taken as true.

2. The student was of Polish descent and Ludwig allegedly used a derogatory term to describe the student's nationality. When the University's Director of Athletics, Larry Marfise, ordered Ludwig to cease using derogatory comments, Ludwig allegedly ignored the directive and continued di-

recting inappropriate remarks toward the student. Marfise warned Ludwig a second time after the student's father complained to Ludwig; Marfise further warned plaintiff on this occasion not to retaliate against the student. Shortly thereafter, the student was cut from the basketball team.

The facts underlying the student's complaint are derived from attachments to the plaintiff's complaint.

Sederburg which included his concern that he was not being afforded due process of law.

On November 15, 1995, Duffett and Marfise advised Ludwig that he would be suspended for a period of sixty days commencing on November 20, 1995, subject to the approval of and ratification by the Board of Trustees of the University at a meeting on November 18, 1995. Ludwig was also informed that his employment would be terminated effective May 14, 1996, also subject to the approval of the Board of Trustees. At the November 18 meeting, which plaintiff could not attend but where his counsel did appear, the Board of Trustees approved the suspension and termination after hearing from plaintiff's counsel for approximately eight minutes.[3]

Following the Board's decision, Margaret Avritt, the Director of University Relations and Marketing, issued a press release to the student newspaper, *The Torch,* and to *The Big Rapids Pioneer* discussing the circumstances surrounding Ludwig's termination. Subsequent to its release, articles appeared in several newspapers, including *The Torch, The Big Rapids Pioneer,* and *The Detroit News,* discussing the events surrounding plaintiff's termination. In addition to citing the press release, several of the articles purportedly quoted Hill–Kennedy and Marfise. While the articles discussed the student's affirmative action complaint, the articles also discussed an allegation that Ludwig would persuade students who had received scholarships to transfer in order to use the scholarships for other players.

On November 29, 1995, following the publication of some of these aforementioned articles,[4] Ludwig's counsel wrote to Hill–Kennedy expressing his belief that Ludwig had been denied due process of law; Hill–Kennedy responded to this letter the same day.

As a result of these events, Ludwig filed this action in Mecosta County Circuit Court on February 1, 1996, alleging that his suspension without pay constituted a deprivation of a property interest without due process of law, in violation of both the United States and Michigan Constitutions. Ludwig also alleged that the publication of statements concerning his termination were false and amounted to a deprivation of a liberty interest without due process of law. Following the defendants' removal of the action to the United States District Court for the Western District of Michigan, the Board of Trustees of the University, the University, Parsons,[5] Cook, Creswell, Hardaway, Patera, Roman, Wahby,[6] Sederburg, Duffett, Avritt, Hill–Kennedy and Marfise moved, on March 8, 1996, to dismiss the action under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

On April 3, 1996, Ludwig filed an amended complaint which dropped the Board of Trustees and Ferris State University as defendants, added the official capacities of Parsons, Cook, Creswell, Hardaway, Patera, Roman, Wahby, and Sederburg, dropped the individual capacity of Hardaway, and added Schultz[7] in her official capacity. The Defendants moved to strike this amended complaint.

On July 2, 1996, the District Court granted the motion to strike the amended complaint, based on a strict reading of Rule 21 of the Federal Rules of Civil Procedure, and granted the defendants' motion under Rule 12(b)(6). Regarding the motion to dismiss, the District Court concluded that the University's personnel policies did not create a property interest in suspension only with pay. Because the District Court concluded that plaintiff had no property right to suspension with pay, it did not address plaintiff's contention that he was not afforded due pro-

---

**3.** Plaintiff's counsel also submitted a written document to the Board of Trustees.

**4.** The *Detroit News* article was published on December 15, 1995.

**5.** Bruce Parsons served as the Chair of the Board of Trustees.

**6.** R. Thomas Cook, Robert Creswell, Hurticene Hardaway, Gregory Patera, Larry Roman, and Ted Wahby, were all members of the Board of Trustees at the time Ludwig was suspended and terminated.

**7.** Lorraine Schultz was a member of the Board of Trustees at the time plaintiff's amended complaint was filed.

cess prior to his suspension. Addressing plaintiff's contention that the publicized statements deprived him of a liberty interest without due process of law, the court concluded that the statements which only concerned Ludwig's inadequate and improper job performance did not give rise to a liberty interest; however, the statements that accused Ludwig of making ethnic slurs, the court concluded, did constitute a liberty interest. The court, nevertheless, dismissed the claim because it found that plaintiff received all the due process that was due him as Ludwig was offered a number of opportunities to refute the charges against him before the statements were made. The court rejected Ludwig's claim that the University was required to provide him with a full evidentiary hearing with the right to confront the witnesses against him and present witnesses on his behalf. Plaintiff appeals from the District Court's order dismissing his complaint.

## II.

■ We review the propriety of the dismissal of plaintiff's complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure *de novo*. *See Cline v. Rogers,* 87 F.3d 176, 179 (6th Cir.)(citing *Taxpayers United for Assessment Cuts v. Austin,* 994 F.2d 291, 296 (6th Cir.1993)), *cert. denied,* —— U.S. ——, 117 S.Ct. 510, 136 L.Ed.2d 400 (1996). In conducting our review, we must construe the complaint in a light most favorable to plaintiff, accept as true all of plaintiff's well-pleaded factual allegations, and determine whether plaintiff can prove no set of facts supporting his claims that would entitle him to relief. *See id.* (citing *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir.1993)). Applying these standards, we conclude that plaintiff's complaint properly did not withstand the motion to dismiss.

## III.

### A. Due Process

#### 1. Property Interest

■ The first of Ludwig's arguments on appeal is that he was deprived of his property right to continued pay and fringe benefits under his employment contract during his 60 day suspension between November 20, 1995 and January 18, 1996 without due process of law. As Ludwig concedes that he is an at-will employee at the University, he does not claim that he had a property interest in continued employment with the University.

Ludwig's claim is based on the language of the following personnel materials:

### ADMINISTRATIVE AND SUPPORT APPOINTMENTS

I. Definition

. . . . .

Ferris State University's policy is to continue the employment of support employees in accordance with the conditions described in Section II.C below unless there is just cause for termination or unless there is a legitimate business or economic reason for termination. *Due to the nature of their position ... Coaches described in Section II.B. below are not offered the same level of job security as support employees. They serve at will and may be terminated with or without cause; however, the University will provide these employees with substantial notice periods or pay in lieu of notice if their employment with Ferris is terminated except as provided in Section II.A.4 or II.B.3.*

J.A. 174 (emphasis added).

. . . . .

II. Terms of Employment

. . . . .

B. All Coaches

1. If a decision is made not to continue the employment of a coach, the coach will be notified at least sixty (60) calendar days before the effective date of such non-continuation.

2. The University *may* elect to provide a coach with pay in lieu of notice, in an amount equal to the base compensation the coach would have received during the specified notice period.

3. No notice period or payment in lieu of notice shall be required if an employee is terminated for just cause

. . .

J.A. 175 (emphasis added). Regarding the suspension of a member of the University's coaching staff, the personnel policies state:

The Board delegates to the President the authority to suspend, for a period not to exceed thirty (30) days, persons in administrative and coaching positions as described in Sections II.A and B . . . pending Board approval for termination. The President shall immediately notify the Chairperson of the Board of Control of this action. The suspension may be extended by the Chairperson pending full Board action at the next regularly scheduled Board meeting. The Board will confirm or deny the action of the President.

J.A. 172.

To prevail on his claim, Ludwig must establish that he had a property interest in continued pay and benefits during his suspension. If Ludwig cannot establish such an interest, no pre-deprivation process was due him. *See Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 141 (6th Cir.1997). Whether a property interest exists is not determined by reference to the Constitution; rather, property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). A property interest can be created by a state statute, a formal contract, or a contract implied from the circumstances. *See Perry v. Sindermann*, 408 U.S. 593, 602,

92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972); *Bailey*, 106 F.3d at 141; *Woolsey v. Hunt*, 932 F.2d 555, 564 (6th Cir.1991).

In the instant case, Ludwig alleges that the personnel policies of the University created a contractual right to continued pay and benefits during his suspension. We disagree. The plain language of the personnel policies declare that coaches only have a contractual right to sixty days notice prior to termination. This Ludwig received. Furthermore, the University *may* elect, but is not contractually obligated, to provide a terminated coach with sixty days pay in lieu of notice. The personnel policies create no contractual right to notice and/or pay prior to a suspension. Nowhere in Section II.B of the policies are suspensions discussed; these provisions refer only to non-continuation of employment and termination. The clause in the personnel policies which discusses suspensions gives the President authority to suspend coaches for no more than 30 days and makes no contractual obligation to provide a suspended employee with notice or pay in lieu of notice during the suspension. As the documents concerning plaintiff's employment with the University are the only source from which plaintiff in this case could derive a property interest in continued pay during a suspension and no such contractual right is provided,[8] we hold that plaintiff has failed to establish that he had a property interest in continued pay and benefits during his suspension.[9]

## 2. Liberty Interest

■ Plaintiff's second assignment of error alleges that the public dissemination of information concerning his termination injured his reputation and therefore constituted a depri-

---

[8] The cases to which plaintiff cites as support for his proposition that he has a property interest in continued pay and benefits during a suspension are inapposite. *See, e.g., Gillard v. Norris*, 857 F.2d 1095 (6th Cir.1988)(plaintiff had property interest in continued employment because state statute provided that civil service employees "could not be dismissed or demoted on the basis of any 'nonmerit' factor."); *Ramsey v. Board of Educ.*, 844 F.2d 1268 (6th Cir.1988)(plaintiff had property interest in accumulated sick days because state statute provided for accumulation of sick days and employer recorded the plaintiff's

accumulated sick days); *Kendall v. Board of Educ.*, 627 F.2d 1 (6th Cir.1980)(plaintiff had property interest in continued employment for one year under one year employment contract with school district).

[9] Because we conclude that Ludwig had no property interest in continued pay and benefits during his suspension, we need not determine, under the Due Process Clause, the sufficiency of the hearings afforded Ludwig.

vation of a liberty interest under the Due Process Clause. Because he was deprived of a liberty interest, plaintiff claims he was entitled to a name-clearing hearing which the defendants did not provide.

■■■■ An injury to a person's reputation, good name, honor, or integrity constitutes the deprivation of a liberty interest when the injury occurs in connection with an employee's termination. *See Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972); *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir.1989). When a deprivation of a liberty interest of this kind occurs, the employee must be afforded notice and an opportunity to be heard to refute the charges disseminated against him. *See Chilingirian*, 882 F.2d at 205 (citing *Roth*, 408 U.S. at 573, 92 S.Ct. at 2707). "Thus, when a 'nontenured employee shows he has been stigmatized by the voluntary, public dissemination of false information in the course of a decision to terminate his employment, the employer is required to afford him an opportunity to clear his name.'" *Id.* A liberty interest in one's reputation is implicated, therefore, only when five elements are satisfied. First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment. *See Paul v. Davis*, 424 U.S. 693, 709–10, 96 S.Ct. 1155, 1164–65, 47 L.Ed.2d 405 (1976)(injury to reputation by itself is not a liberty interest protected under the Fourteenth Amendment). Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance. *See Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Chilingirian v. Boris*, 882 F.2d 200, 205–06 (6th Cir.1989); *Lake Michigan College Fed'n of Teachers v. Lake Michigan Community College*, 518 F.2d 1091, 1096–97 (6th Cir. 1975). "A charge that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not constitute a liberty deprivation." *Chilingirian*, 882 F.2d at 205–06 n. 8. Rather, to implicate the Due Process Clause, the employer must have made a statement in the course of the employee's discharge "that might seriously damage his standing and associations in his community" or that might impose "on him a stigma or other disability that [would] foreclose[ ] his freedom to take advantage of other employment opportunities." *Roth*, 408 U.S. at 573, 92 S.Ct. at 2707. A moral stigma such as immorality or dishonesty is required to show a deprivation of liberty. *Id.*

Third, the stigmatizing statements or charges must be made public. *See Bishop v. Wood*, 426 U.S. 341, 348–49, 96 S.Ct. 2074, 2079–80, 48 L.Ed.2d 684. Fourth, the plaintiff must claim that the charges made against him were false. *See Codd v. Velger*, 429 U.S. 624, 628, 97 S.Ct. 882, 884–85, 51 L.Ed.2d 92 (1977). Lastly, the public dissemination must have been voluntary. *See Chilingirian*, 882 F.2d at 205. If the above requirements are met, the employee is entitled to notice and an opportunity to be heard through a name-clearing hearing, *id.*, when plaintiff has made a request for such a hearing. *See Gillum v. City of Kerrville*, 3 F.3d 117, 121 (5th Cir.1993); *Rosenstein v. City of Dallas*, 876 F.2d 392, 395 (5th Cir.1989), *rehearing granted and opinion reinstated in relevant part by*, 901 F.2d 61 (5th Cir.1990).[10] Such a hearing "need only provide an opportunity to clear one's name and need not comply with formal procedures to be valid." *Chilingirian*, 882 F.2d at 206.

The plaintiff cites specifically to several newspaper articles printed in *The Torch*, *The Big Rapids Pioneer*, and *The Detroit News* following his termination to support his contention that his reputation has been stigma-

---

**10.** In prior cases, the Fifth Circuit had imposed a requirement upon the public employer that it "make known to the employee that he may have an opportunity to clear his name upon request." *In re Selcraig*, 705 F.2d 789, 796 (5th Cir.1983). The Eleventh Circuit also imposes the requirement that a public employer give notice of the right to a name-clearing hearing "when stigma-

tizing information is made part of the public records, or otherwise published." *Buxton v. City of Plant City*, 871 F.2d 1037, 1046 (11th Cir. 1989). In the instant case, Ludwig does not claim he was unaware he may be entitled to a name-clearing hearing because of the University's failure to give him notice of such a right.

tized.[11] These articles, *inter alia,* contain the discriminatory remarks Ludwig allegedly directed at the student, a description of Ludwig's alleged retaliation following the complaint lodged by the student's father, and the following quote attributed to Marfise: "I've heard from various people that Tom [Ludwig] would get kids to come here, then try to discourage them, get them to transfer and use that scholarship money for someone else."[12]

The District Court concluded that the majority of the statements printed in the articles merely allege that Ludwig performed his job improperly or inadequately and therefore do not support a claim of a liberty interest deprivation. However, the District Court concluded that the published statements alleging that Ludwig made ethnic slurs support plaintiff's claim of a liberty interest deprivation. The court below, however, dismissed Ludwig's complaint because it concluded that he was afforded sufficient opportunities to refute the charges against him prior to his termination.

We need not determine whether any or all of the disseminated statements deprived plaintiff of a liberty interest because we conclude that plaintiff failed to sufficiently apprise the University of his desire for a name-clearing hearing following the dissemination of the statements. Plaintiff claims, on appeal, that he requested a name-clearing hearing in a November 29, 1995, letter to Hill–Kennedy. That letter, however, was not attached to the plaintiff's complaint and the complaint alleges only that "Plaintiff's counsel Walz delivered to Defendant Hill–Kennedy a letter dated November 29, 1995, asserting, *inter alia,* that the actions taken by Defendants denied Plaintiff due process of law."[13] *See* Plaintiff's Complaint at p.13 ¶ 43. In view of plaintiff's complaints

throughout the investigatory process concerning the lack of due process afforded him by the University, we conclude that the November 29, 1995 letter accusing the defendants of denying plaintiff due process of law, as described by the complaint and attached exhibits, was insufficient to constitute a request for a name-clearing hearing; that letter, as alleged in plaintiff's complaint, was insufficient to alert the University that Ludwig was complaining of a lack of due process in connection with a liberty interest as opposed to a lack of due process in connection with his claimed property interest, a claim which he had been asserting for some time. *Cf. Rosenstein,* 876 F.2d 392 (plaintiff's request for an "appeal" from his termination for something he "did not do" constituted a request for a name-clearing hearing where the only issue in the case was the truth or falsity of the charge that stigmatized the plaintiff). We, therefore, conclude that plaintiff's claim for a deprivation of liberty interest was properly dismissed.

### B. Striking of Amended Complaint

■ Plaintiff raises a third issue on appeal in which he claims that the District Court erred in striking his first amended complaint. Plaintiff contends that the District Court erred in relying on Rule 21 of the Federal Rules of Civil Procedure in striking the amended complaint rather than permitting an amendment without leave of the court pursuant to Rule 15 of the Federal Rules of Civil Procedure. Rule 21 requires leave of the court when parties are dropped or added at any stage of the action. *See* Fed.R.Civ.P. 21. Rule 15, however, provides that a party may amend a pleading once as a matter of course before a responsive pleading is served. *See* Fed.R.Civ.P. 15(a). We do not address this alleged error because we have

---

**11.** These articles were printed on November 24, 1995, November 22, 1995, and December 15, 1995, respectively.

**12.** This statement appearing in a *Detroit News* article was published on December 15, 1995.

**13.** Attached to Ludwig's complaint is a letter from Hill–Kennedy to Ludwig's attorney containing excerpts of the November 29, 1995 letter. Hill–Kennedy's letter quotes counsel for Ludwig

as stating, "there was a total lack of 'due process' in the 'impartial, confidential investigation' Tom Ludwig was subject to" and "FSU might very well be asking/forcing him to admit to something which was untrue and intellectually dishonest: namely, what the Investigation team had inappropriately concluded, by their 'investigation' that had totally denied him due process of law.[]"

**412**

concluded that plaintiff's claims have failed on the merits.[14]

## IV.

For the foregoing reasons, the judgment of the District Court is **AFFIRMED**.

14. Plaintiff also alleges on appeal that the District Court, in reviewing the defendants' motion to dismiss under Rule 12(b)(6), did not construe the complaint in a light most favorable to plaintiff and accept as true all of plaintiff's well-pleaded factual allegations. Our review of the record reveals that the District Court properly accepted as true all of plaintiff's factual allegations in the complaint and, therefore, committed no error.