*Bell & Beckwith v. United States*, 766 F.2d 910, 915 (6th Cir. 1985) (citations omitted).

Regardless of how MSO/MSRR couches its claims, what it seeks in essence is the specific performance of the 1991 Agreement. This is purely a state law breach of contract action. As discussed above, MSO/MSRR anticipates that RUA will argue, in defense to enforcement of the 1991 Agreement, that the 1997 Agreement is the one currently in effect. If RUA were to make such an argument, MSO/MSRR would then make the counter-argument that the 1997 Agreement is invalid as a result of its own failure to obtain STB approval. Basically, MSO/MSRR argues that this case is properly in federal court because its defense *to RUA's* defense rests on the interpretation of federal law. The federal issue here is even more remote than in *Skelly*, as it does not rest on an anticipated federal defense.[2]

To bring a case pursuant to § 1331, ". . . a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936). Such is not the case here. Therefore, we conclude that this matter was properly dismissed for lack of jurisdiction.

## IV.  CONCLUSION

Accordingly, for all the foregoing reasons, we AFFIRM the district court.

---

[2]The Supreme Court explained in *Franchise Tax Bd.*, 463 U.S. at 19, that "[f]ederal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought coercive action to enforce its rights, that suit would necessarily present a federal question." This case does not fall into this category of cases since, if RUA had instituted suit on the 1997 Agreement, its cause of action would also have been premised on a state law breach of contract claim. In this situation, MSO/MSRR would still interject the federal issue only by way of an anticipated defense.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0141P (6th Cir.)
File Name: 02a0141p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

MICHIGAN SOUTHERN RAILROAD COMPANY, f/k/a WABASH & WESTERN RAILWAY CO. and MICHIGAN SOUTHERN RAILROAD CO., INC.,

*Plaintiffs-Appellants,*

v.

BRANCH & ST. JOSEPH COUNTIES RAIL USERS ASSOCIATION, INC. and INDIANA NORTHEASTERN RAILROAD COMPANY,

*Defendants-Appellees.*

No. 99-1838

Appeal from the United States District Court for the Western District of Michigan at Kalamazoo. No. 99-00064—Richard A. Enslen, District Judge.

Argued: January 26, 2001

Decided and Filed: April 24, 2002

Before:  MARTIN, Chief Circuit Judge; SUHRHEINRICH, Circuit Judge; OLIVER, District Judge.[*]

---

**COUNSEL**

---

**ARGUED:**  Daniel A. LaKemper, Peoria, Illinois, for Appellants.    Charles R. Bappert, BIRINGER, HUTCHINSON, VAN DOREN, LILLIS & BAPPERT, Coldwater, Michigan, for Appellees. **ON BRIEF:** Daniel A. LaKemper, Peoria, Illinois, for Appellants.    Charles R. Bappert, BIRINGER, HUTCHINSON, VAN DOREN, LILLIS & BAPPERT, Coldwater, Michigan, for Appellees.

---

**OPINION**

---

OLIVER, District Judge.  Plaintiffs-Appellants Michigan Southern Railroad Company and Michigan Southern Railroad Co., Inc. appeal from the district court's dismissal of their complaint for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Plaintiffs brought suit against the Branch & St. Joseph Counties Rail Users Association, Inc., seeking a declaration that a 1991 agreement concerning the use and maintenance of certain railroad tracks is effective, as well as for specific performance of its terms.  Plaintiffs sought relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and alleged federal question jurisdiction under 28 U.S.C. § 1331 and 49 U.S.C. §§ 10501, 10901, and 10903 of the Interstate Commerce Commission Termination Act.  For the reasons set forth below, we AFFIRM the district court.

---

[*] The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

In *Skelly Oil Co.*, Phillips Petroleum contracted with Skelly Oil Company to purchase natural gas from it, subject to the condition that a certain certificate be obtained from the Federal Power Commission.  Phillips obtained the required certificate, but the Federal Power Commission imposed several requirements on its issuance.  Skelly Oil contended that the conditional certificate did not meet the requirements of the contract and gave notice that the contract would be terminated.

Phillips brought an action in federal court, seeking a declaratory judgment that a proper certificate had been issued by the Federal Power Commission and that the contract therefore had to be performed.  The Supreme Court held that there was no federal question jurisdiction because the federal issue arose solely in anticipation of a federal law defense. The Court concluded that, in the absence of the Declaratory Judgment Act, this case could only be brought as a coercive action seeking damages or specific performance under state law for breach of contract by Phillips against Skelly.  Skelly's defense would then rest on the nature of the certificate issued by the Federal Power Commission.  The Court explained that it would "distort the limited procedural purpose of the Declaratory Judgment Act" to permit federal jurisdiction based on requests for declaratory judgments that are actually anticipations of federal defenses. *Skelly Oil*, 339 U.S. at 673-74.

We have previously explained the preclusion of jurisdiction under these circumstances as follows:

The rationale ... is that the anticipated defense might never be raised, or if it is raised, never reached because the plaintiff fails to prevail on a preliminary issue of state law. There is no federal interest, and a strong state interest, in providing a forum for the litigation of purely state law issues between citizens of the same state.

Accordingly, the district court properly refused to exercise federal question jurisdiction.

B. *Has MSO/MSRR Met the Well-Pleaded Complaint Rule?*

Even assuming that the determination of whether the 1997 Agreement ever took effect involves a substantial, disputed question of federal law, we find that the district court was correct in concluding that it lacked jurisdiction to hear this lawsuit for breach of the 1991 Agreement because the only federal question arguably at issue is interjected into this lawsuit solely as a defense to RUA's anticipated defense to MSO/MSRR's breach of contract claim. Under the Supreme Court's decision in *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667 (1950), federal question jurisdiction cannot be conferred on a district court by circumventing the well-pleaded complaint rule in this manner.

The Declaratory Judgment Act of 1934 provides that in a case of actual controversy, a competent court may "declare the rights and other legal relations" of a party "whether or not further relief is or could be sought." 28 U.S.C. § 2201; *Public Serv. Comm'n of Utah v. Wycoff*, 344 U.S. 237, 241 (1952). It is well-settled that the Declaratory Judgment Act cannot serve as an independent basis for federal subject matter jurisdiction. *Skelly Oil Co.*, 339 U.S. at 671 (Congress enlarged the range of remedies available in federal courts but did not extend their jurisdiction); *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 240 (1937) (explaining that Declaratory Judgment Act is procedural only); *see also Public Serv. Comm'n of Utah v. Wycoff*, 344 U.S. 237, 241 (1952) (Act confers discretion on courts to fashion a remedy, rather than an absolute right upon the litigant). Accordingly, a plaintiff cannot circumvent the well-pleaded complaint rule by seeking a declaratory judgment that a federal law is unconstitutional or inapplicable if the complaint itself would not otherwise state a federal question. *Skelly Oil Co.*, 339 U.S. 667.

## I. BACKGROUND

The Appellants, Michigan Southern Railroad Co., f/k/a/ Wabash & Western Railway Co., an Iowa corporation ("MSO"), and Michigan Southern Railroad Co., Inc., a Delaware corporation ("MSRR"), are railroads authorized by federal law to provide common carrier rail service on certain rail lines in Michigan and Indiana.

On December 14, 1990, the Interstate Commerce Commission (now Surface Transportation Board) authorized MSRR to provide common carrier rail service to a railroad line extending from just east of Sturgis, Michigan, to Coldwater, Michigan, a distance of approximately 22 miles (hereinafter, the "Rail Line"). The Rail Line was then owned by the Branch & St. Joseph Counties Rail Users Association, Inc., a Michigan non-profit corporation ("RUA").

On June 6, 1991, MSRR and RUA entered into a written agreement (the "1991 Agreement") which provided, *inter alia*, that MSRR would service the Rail Line for a term of 10 years and 6 months and granted MSRR an option to purchase the Rail Line.

On December 17, 1996, MSRR entered into a contract with Wabash & Western Railway Co., now MSO, which provided that MSO would lease MSRR's assets and provide rail service on MSRR's behalf to its lines in Michigan and Indiana. The contract also granted MSO an option to purchase MSRR's capital stock.

On June 3, 1997, MSRR and RUA entered into an "Amended and Restated Operating Agreement" (the "1997 Agreement"). Like the 1991 Agreement, this agreement included an option to purchase the Rail Line. It also expanded the operating rights of MSRR an additional 8 miles, to include the Rail Line from Coldwater, Michigan to Quincy, Michigan. This agreement contained the following provisions:

Section 401.  Responsibility

(a)  The OPERATOR [MSRR] shall perform, or cause to be performed, all maintenance of way on the rail facility described in Attachment I in accordance with and subject to the laws, rules, regulations, and orders of governmental agencies.  The OPERATOR shall improve the rail facility to a minimum of a "Class 1 track," as defined by 49 C.F.R. § 213.9, within one year from the effective date of this agreement.

*            *            *

(c)  Should the OPERATOR fail to comply with the provisions of the Section, the RUA will issue a notice of noncompliance stating the nature of such noncompliance.  Failure by the OPERATOR to cure the noncompliance within thirty (30) days of its receipt of such notice shall be reason for termination of this Agreement by the RUA.

*            *            *

Section 1401 of the agreement, entitled "Execution," provided as follows:

This Agreement will become binding on the parties and of full force and effect upon the OPERATOR furnishing proof satisfactory to the RUA, evidencing that the OPERATOR has taken all steps to and has rights from the ICC [now Surface Transportation Board] for the operation of the QUINCY BRANCH . . . .

MSRR never obtained operation rights from the Surface Transportation Board ("STB") for the extension of service to Quincy.

On or about January 1, 1999, MSRR became a wholly-owned subsidiary of MSO, by virtue of MSO's purchase of all the outstanding capital stock of MSRR.  On January 6, 1999,

Here, none of the ICCTA provisions cited by MSO/MSRR provides for a private cause of action under the circumstances of this case.  In other words, none of these provisions permits a "coercive action" by one party to a private contract against the other for its failure to obtain STB approval for operation of a rail line, when such approval is made a condition of the contract.  Moreover, MSO/MSRR does not contend that the ICCTA contains an implied private remedy permitting it to sue directly under the statute.  *See Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 809 n.6 (1986) ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced.").

Nevertheless, MSO/MSRR maintains that the court has subject matter jurisdiction because the resolution of a federal question under the ICCTA is essential to the determination of its state law breach of contract action for specific performance.  It argues that to determine whether the 1991 Agreement applies, a court will have to determine whether the 1997 Agreement is in effect.  In making this determination, the court will have to decide whether MSO/MSRR obtained the approval from STB under the ICCTA as required by the 1997 Agreement.  It is the interpretation of the ICCTA in this context which MSO/MSRR maintains provides the basis for federal question jurisdiction.

As explained above, mere reference to a federal statute does not establish federal jurisdiction unless a substantial, disputed question of federal law is a necessary element of a state cause of action. *Ford v. Hamilton*, 29 F.3d 255, 258 (6th Cir. 1994).  Regardless of whether the federal issue raised herein may be viewed as an element of MSO/MSRR's cause of action, we conclude that this lawsuit, based on state contract law, does not raise a substantial or disputed question of federal law.  There is no dispute between the parties as to whether MSO/MSRR obtained approval for the extension of service to Quincy.  The parties agree that the approval was not obtained.  What effect the failure to obtain approval has on the 1997 Agreement is purely a matter of state law.

right to relief necessarily depends on resolution of a substantial question of federal law.").

A.  *Does the Lawsuit Involve a Substantial and Disputed Question of Federal Law?*

In this case, MSO/MSRR claims that the district court had federal question jurisdiction to determine that the 1991 Agreement, as opposed to the 1997 Agreement, was in effect inasmuch as there was never any certificate of operation obtained within the meaning of 49 U.S.C. §§ 10501, 10901 and 10903 of the ICCTA as required by the 1997 Agreement. MSO/MSRR argues that since the question of whether the 1997 Agreement ever took effect depends on the interpretation of a federal statute, this case "turns" on a question of federal law. Because we conclude that MSO/MSRR's cause of action is based on state law and that a substantial, disputed question of federal law is not a necessary element of MSO/MSRR's claim, we agree with the district court that it did not have subject matter jurisdiction to hear this case.

Generally, the Title 49 provisions cited by MSO/MSRR in this case provides the Surface Transportation Board with jurisdiction over transportation by rail carriers and further provides for remedies with respect to routes, services and facilities of those carriers. 49 U.S.C. § 10501, entitled "General jurisdiction," provides that the Surface Transportation Board has exclusive and plenary jurisdiction over the operation of railroads in the United States. § 10901, entitled "Authorizing construction and operation of railroad lines," deals with the need for STB approval of construction and/or extension of railroad lines, and § 10903, entitled "Filing and procedure for application to abandon or discontinue," prescribes the process for, and circumstances under which, the STB will approve a rail carrier's wish to discontinue service.

MSRR wrote a letter to RUA, informing it of this fact and giving notice to RUA of its intent to exercise the purchase option, as provided for by Section 1002 of the 1991 Agreement.

On March 11, 1999, RUA notified MSRR of its belief that the 1997 Agreement was in effect and that MSRR was in breach of that Agreement, inasmuch as MSRR had not maintained the tracks in "Class 1" condition as required by Section 401. RUA further informed MSRR that it was willing to "consider selling" the Rail Line, but wanted some assurance that MSRR intended to restore the tracks as agreed. RUA again sent letters on April 21, 1999, and April 30, 1999, restating its belief that MSRR was in breach of the 1997 Agreement and requesting compliance.

On May 30, 1999, MSRR sent RUA a letter disputing that it had breached the 1991 Agreement, and further demanded that RUA honor MSRR's request to exercise its option to purchase the Rail Line under the terms of that agreement.

On May 21, 1999, MSO/MSRR filed this action in federal court seeking a declaratory judgment that the 1991 Agreement was in effect, and requesting specific performance of its option to purchase the Rail Line. MSO/MSRR asserted federal question jurisdiction under 28 U.S.C. § 1331 and the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. §§ 10501, 10901 and 10903.[1] On June 7, 1999, MSO/MSRR amended its complaint, adding Indiana Northeastern Railroad Company ("INE") as a party,

---

[1]Effective January 1, 1998, Congress enacted the Interstate Commerce Commission Termination Act of 1995, which dissolved the Interstate Commerce Commission. It created the Surface Transportation Board within the Department of Transportation in its place. The STB inherited the ICC's rail oversight. The STB now stands as the central point of recordation of security interests and financial instruments affecting railroad cars, locomotives, other rolling stock, and vessels. *See generally*, Mark W. Flory et al., *Recent Developments in Commercial Transportation Litigation*, 33 TORTS & INS. L.J. 343, 344 (1998).

asserting a claim against it for tortious interference with business, based on the belief that INE had entered into an agreement with RUA to operate over the disputed Rail Line.

Although the district court initially granted MSO/MSRR's Motion for Temporary Restraining Order barring INE from operating on the Rail Line, the district court ultimately dismissed the action for lack of subject matter jurisdiction. The court concluded that the Declaratory Judgment Act does not provide an independent basis for federal subject matter jurisdiction, and the provisions of the ICCTA cited by Plaintiffs dealt only with the authority of the Surface Transportation Board to regulate interstate rail service, and did not provide the court with jurisdiction over Plaintiffs' claims.

## II. STANDARD OF REVIEW

This court reviews *de novo* the district court's decision to dismiss MSO/MSRR's complaint for lack of subject matter jurisdiction. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249, 252 (1986); *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996).

Lack of subject matter jurisdiction is an affirmative defense that a defendant may assert in a motion to dismiss. Fed. R. Civ. P. 12(b)(1); *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (emphasizing that to survive a motion to dismiss, a complaint must contain "either direct or indirect allegations respecting all material elements to sustain a recovery under some viable legal theory"). Where subject matter jurisdiction is challenged pursuant to 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion. *See Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). Specifically, the plaintiff must show that the complaint "alleges a claim under federal law, and that the claim is 'substantial.'" *Musson Theatrical, Inc.*, 89 F.3d at 1248. The plaintiff will survive

the motion to dismiss by showing "any arguable basis in law" for the claims set forth in the complaint. *Id.*

In conducting our review, we "construe the complaint in a light most favorable to the plaintiff, accept as true all of plaintiff's well-pleaded factual allegations, and determine whether the plaintiff can prove no set of facts supporting [the] claims that would entitle him to relief." *Ludwig v. Board of Trustees of Ferris State Univ.*, 123 F.3d 404, 408 (6th Cir.1997). We review for clear error any factual findings the district court made in deciding the motion to dismiss. *See Gafford v. General Elec. Co.*, 997 F.2d 150, 161 (6th Cir.1993).

## III. ANALYSIS

The sole issue before this court is whether the district court erred in determining that there was no basis for federal subject matter jurisdiction in this case. 28 U.S.C. § 1331 provides that the "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." In determining whether an action "arises under" federal law, we are governed by the well-pleaded complaint rule, which requires that a federal question be presented on the face of the complaint. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). Accordingly, a case arises under federal law, for purposes of § 1331, when it is apparent from the face of the plaintiff's complaint either that the plaintiff's cause of action was created by federal law, *Mottley,* 211 U.S. at 152; or if the plaintiff's claim is based on state law, a substantial, disputed question of federal law is a necessary element of the state cause of action. *Gully v. First Nat'l Bank*, 299 U.S. 109, 112-13 (1936); *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983) ("[O]nly those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's