NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1262n.06

No. 11-2249

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Dec 06, 2012*

DEBORAH S. HUNT, Clerk

| | |
|---|---|
| DENICE GREER; 178 MEMBERS OF TEAMSTERS LOCAL 214, ) ) ) Plaintiffs-Appellants, ) ) v. ) ) DETROIT PUBLIC SCHOOLS, ) ) Defendant-Appellee. ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN O P I N I O N |

BEFORE:  McKEAGUE and GRIFFIN, Circuit Judges; and DLOTT, District Judge.[*]

**McKEAGUE, Circuit Judge.**  Plaintiffs-appellants, Denice Greer et al., timely appeal the district court's order granting judgment on the pleadings to her former employer, defendant Detroit Public Schools ("DPS").  Greer, representing 178 members of Teamsters Local 214 ("the union"), argues that the termination of their employment as security guards without notice or hearing deprived them of property without due process of law.  Plaintiffs also argue that DPS infringed their liberty interests when DPS made disparaging remarks about Teamsters Local 214.  For the following reasons, we affirm the district court's order granting judgment on the pleadings.

### I.  FACTUAL BACKGROUND

Plaintiffs, all members of the union, were employed as security guards throughout DPS. Plaintiffs' employment was governed by a collective bargaining agreement ("CBA"), which was negotiated in 1999

---

[*]Honorable Susan J. Dlott, Chief United States District Judge for the Southern District of Ohio, sitting by designation.

and became effective on July 1, 1999. The CBA "automatically" renewed from year to year unless terminated by either party in writing at least 90 days prior to the effective expiration date. At the current time, it appears that neither DPS nor the union has terminated the CBA.

In 2006, DPS entered into negotiations with the union for wage concessions, citing a severe budgetary crisis. Plaintiffs allege that, during these negotiations, DPS officials "expressly and/or impliedly" promised the continuation of employment. The union accepted the wage concessions, which turned into a permanent reduction in pay.

In 2009, DPS once again faced a severe budgetary crisis. The Michigan Department of Education declared a financial emergency within DPS and appointed Robert C. Bobb to serve as the Emergency Financial Manager ("EFM") of the school district. In December 2009, Bobb laid off twelve members of the security-officer workforce, citing a reduction in the available work. Bobb replaced these twelve officers with members of a private security firm, Securitas Security Services, USA, Inc.

In April 2010, DPS notified the union that it had posted on its website a request for proposals ("RFP") for a contract for security services. R. 44-1, Page ID # 635. The union failed to submit a bid in accordance with the procedures laid out in the RFP. *Id.* The union, however, claimed that it did submit a proposal package, albeit two months before DPS even issued the RFP. *Id.*

Then, by a letter dated July 29, 2010, DPS notified all plaintiffs that their employment with DPS was terminated, effective July 30, 2010. Although the letter stated that the termination was "due to outsourcing of in-school security staffing," plaintiffs allege that DPS terminated them for excessive absenteeism. Plaintiffs rely on an online press release to substantiate this claim. The press release, published on the DPS website, states:

> Detroit Public Schools estimates the district will save more than $4.5 million annually through a new one-year contract being executed with Securitas that is expected to improve safety in all schools and radically reduce absenteeism among security personnel.
> DPS was paying about $11 million for DPS security officers. The contract for Securitas will be approximately $6.5 million.
> Reports showed that the district's security officers . . . were absent 11 to 12 percent on average daily.

R. 2-1, Exhibit C, Page ID # 27. DPS never identified the specific officers who were purportedly guilty of absenteeism.

## II. PROCEDURAL HISTORY

Before this action was commenced,[1] the union exhausted its remedies under the CBA and also pursued remedies in Michigan administrative proceedings: obtaining an adverse arbitration award pursuant to the grievance procedures under Article XI of the CBA and an adverse ruling from the Michigan Employment Relations Commission ("MERC"). *See* R.44-1, ALJ Order, Page ID # 63; R. 41-4, Arbitration Award, Page ID # 559. We turn to the administrative decision and then to the arbitration proceedings. We then turn to the related state court action and the current litigation.

### A. The Administrative Decision

On July 8, 2010, the union filed an unfair-labor-practice charge with MERC against DPS alleging that DPS had violated the Public Employment Relations Act ("PERA"). R. 44-1, ALJ Order, Page ID # 634; *see* Mich. Comp. Laws § 423.10, *et seq*. The union alleged that DPS violated PERA by refusing to

---

[1]It is important to note that plaintiffs are not being represented by the union in the case at bar. Amended Compl., R-36, Page ID # 462. Plaintiffs brought a related action against the union for breach of its duty of fair representation. *Id.*; *see also* Wayne Cnty. Circuit Court Case No. 10-008773 CL (No. found at R. 36, Page ID # 462).

acknowledge a bid for services, refusing to bargain for a lower-cost CBA, and refusing to allow the union to submit a bid prior to negotiating with Securitas. *Id.* at Page ID # 635.

The administrative law judge ("ALJ"), Judge Julia C. Stern, found that the union's February proposal was not a proper bid. According to *Lakeview Community Schools v. Lakeview Educational Support Personnel Assoc.*, 24 MPER ___, at *7 (2011),[2] the bargaining unit must meet the same conditions required of third-party bidders and must act in the same manner as any other third-party contractor. Here, by not submitting a proper bid for the April RFP, the union was deemed to have failed to meet the same conditions required of third-party bidders. R. 44-1, Page ID # 638.

The ALJ also determined that PERA barred the CBA from creating a protected property interest. According to the ALJ, any continued right to employment created by the CBA would be barred by PERA's provision that states that a public employer cannot collectively bargain with a public employee over the employer's right to contract with a third party for noninstructional support services. With these conclusions in mind, the ALJ granted summary disposition in favor of DPS. *Id.* at Page ID # 639.

### B. Arbitration

The instant dispute was also the subject of arbitration proceedings between DPS and the union. The arbitration concluded in June 2011. R. 41-4, Page ID # 559. After the June 29, 2010, letter terminating the security officers' employment, the union filed two grievances through the CBA's grievance procedures. In the first, the union contended that DPS failed to hold disciplinary hearings and failed to demonstrate just cause. And in the second, the union alleged that DPS failed to provide fourteen days' notice before termination. *Id.* at Page ID # 560-61. The issues before the arbitrator centered on whether DPS's

---

[2]Case No. C10 C-059, *available at* http://www.dleg.state.mi.us/ham/ber/pdf/2011/may/c10c059.pdf.

outsourcing decision violated the CBA provisions on "Discharge and Discipline," and "Layoffs." *Id.* at Page ID # 562. The union alleged that DPS violated the employees' procedural due process rights by failing to hold disciplinary hearings and failing to demonstrate just cause. R. 41-4, Page ID # 560.

The arbitrator looked at the Discipline and Discharge provision and found that the provision was only relevant when employees are disciplined for misconduct. *Id.* at Page ID # 569. Here, DPS terminated the security officers to allow for outsourcing, so there was no requirement "that these employees receive the due process protections" provided by the CBA for disciplinary actions. *Id.* at Page ID # 570. The arbitrator therefore dismissed the union's procedural due process claims, finding that the CBA only required a hearing for disciplinary discharges. *Id.* at Page ID # 569. Specifically, the arbitrator stated, "[s]ince the terminations of the security officers did not involve their discipline for misconduct, there was no requirement that these employees receive the due process protections that are triggered by an employee's discipline or discharge." R. 41-4, Page ID # 569-70. The arbitrator also found insufficient evidence to support the contention that the employer terminated the security officers for excessive absenteeism. *Id.* at Page ID # 570.

The arbitrator then looked at the Layoff provision, which would have, if applicable, required fourteen days notice before termination. The arbitrator deemed the provision inapplicable because the employees were not laid off—they were terminated. *Id.* at 580.

The arbitrator also discussed ALJ Stern's findings that the union failed to present a proper bid after the RFP. *Id.* at Page ID # 577. The arbitrator found that the union had plenty of notice; in fact, Union Steward Sutton testified that he was given as much as six months' notice of DPS's plan to open bidding

for school services. *Id.* Steward Sutton also testified that he met with EFM Bobb in March 2010 to discuss the outsourcing of school security services. *Id.*

The arbitrator also found, just as the ALJ found, that PERA would have made any provision that purported to give plaintiffs a protected property right to continued employment unenforceable. The arbitrator subsequently denied the union's grievances. *Id.*

### C. Related State Court Action

Beyond the administrative proceeding and the arbitration, plaintiffs brought suit against DPS and the union in a hybrid action under the Labor Management Relations Act, 28 U.S.C. § 185(a), in Wayne County Circuit Court. R. 9-2, Page ID # 59. The complaint alleged that the union breached its duty of fair representation by "delaying meritorious grievances" and "failing to enforce the contract rights of its members." *Id.* at Page ID # 61. Plaintiffs alleged that the union and DPS entered into a "Joint Operating Agreement" regarding the retention of Securitas Services. *Id.* at Page ID # 63-64. The mass termination of plaintiffs therefore allegedly constituted an "unfair labor practice" and was "without just cause." *Id.* at Page ID # 64.

The state court initially entered a preliminary injunction on August 24, 2010, ordering DPS to rehire all of the terminated members of the union. *Id.* at Page ID # 65. However, the Michigan Court of Appeals vacated the injunction and held that plaintiffs had not demonstrated irreparable harm. R. 9-3, Page ID # 80. After remand and a hearing, the state court granted summary disposition in favor of DPS. R. 41-2, Page ID # 541. The Court of Appeals affirmed, holding that plaintiffs had failed, *inter alia*, to show that the union had breached its duty of fair representation. *Greer v. Detroit Pub. Sch.*, No. 304197, slip op. at 3 (Mich. Ct. App. Nov. 15, 2012) (per curiam) (unpublished).

### D.  Current Litigation

The instant appeal challenges the district court's grant of judgment on the pleadings in favor of DPS. *See* Fed. R. Civ. P. 12(c).  The district court granted DPS's motion and dismissed the case with prejudice. R. 45, Page ID # 650.  The court held that plaintiffs had not alleged a cognizable property right to continued employment or any cognizable injury to their liberty interests.  The court found that the Discharge and Discipline provision in the CBA only applied to disciplinary terminations.  Because plaintiffs failed to show that their termination was based on a disciplinary measure, the Discharge and Discipline provision did not give rise to a legitimate claim of entitlement to continued employment in the face of outsourcing necessitated by the economic emergency.  *Id.* at Page ID # 645.

The district court also considered the applicability of PERA to the case at hand.  *Id.* at Page ID # 646.  PERA prohibits public school employers and unions from bargaining over the employers right to contract with third parties for noninstructional support services.  Mich. Comp. Laws § 423.215(3)(f).  The court found that Michigan law does not permit the creation of a property right to continued employment for noninstructional support staff, as PERA expressly precludes such a discussion.  R. 45, Page ID # 647.

With respect to plaintiffs' liberty claim, the court found that the generalized claims of absenteeism were insufficient to show the requisite individual harm necessary to invoke Fourteenth Amendment due process protections.  *Id.* at Page ID # 649.  The district court therefore granted judgment on the pleadings in favor of DPS.

### III.  ANALYSIS

We review *de novo* a district court's grant of judgment on the pleadings under Rule 12(c). *McLemore v. Regions Bank*, 682 F.3d 414, 425 (6th Cir. 2012).  Our review of the matter under Rule 12(c)

is the same as review under Federal Rule of Civil Procedure 12(b)(6). *Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012). In reviewing the complaint, we are required to "accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Id.* (quoting *Dubay v. Wells*, 506 F.3d 422, 426 (6th Cir. 2007)). The "motion [to dismiss] may be granted only if the moving party is nevertheless clearly entitled to judgment." *McGlone v. Bell*, 681 F.3d 718, 728 (6th Cir. 2012). While a complaint need not contain detailed factual allegations, it must include more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint will survive a motion to dismiss if it contains sufficient factual material to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

Where as here, plaintiffs allege a due process violation, the requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). Plaintiffs allege both property and liberty deprivations. We now turn to these claims.

### A. Count I: Deprivation of Property

Plaintiffs' first cause of action alleges that DPS "deprived . . . them of property without due process of law in violation of rights protected by the 14th Amendment." In order to claim a property interest, a person must "have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577. Legitimate claims of entitlement exist through an independent source—such as state law or such rules or "mutually explicit understandings" that support a person's claim of entitlement—and do not stem from the Constitution itself.

*Id.*; *Perry v. Sindermann*, 408 U.S. 593, 602 (1972) (finding that a de facto tenure program could be used as evidence to show a teacher's legitimate claim of entitlement to job tenure); *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir. 2008); *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007).

Once it is determined that the due process clause applies, what process is due is a question of federal law. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). The grievance procedures provided by a collective bargaining agreement can satisfy the employee's constitutional due process rights. *Farhat v. Jopke*, 370 F.3d 580, 596 (6th Cir. 2004). Additionally, "[i]f satisfactory state procedures are provided in a procedural due process case, then no constitutional deprivation has occurred despite the injury." *Jefferson v. Jefferson Cnty. Pub. Sch. Sys.*, 360 F.3d 583, 588 (6th Cir. 2004) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). "The law is well-established that it is the *opportunity* for a post-deprivation hearing before a neutral decisionmaker that is required for due process. As long as the procedural requirements are reasonable and give the employee notice and an opportunity to participate meaningfully, they are constitutionally adequate." *Farhat*, 370 F.3d at 596.

Plaintiffs' due process property claim raises two claims of entitlement: (1) whether the CBA created a property interest in continued employment; and (2) if not, whether alleged express or implied promises of continued employment created a "mutually explicit understanding" that, in itself, created such a property interest. Under the second theory, plaintiffs claim that they accepted wage concessions, during the 2006 fiscal emergency, in exchange for an "express and/or implied" promise for continued employment.

However, even assuming that plaintiffs had a legitimate claim of entitlement,[3] plaintiffs were quite clearly afforded due process. Plaintiffs were afforded both a grievance procedure under the CBA and state procedures through MERC. Under Article XI "Grievance Procedure," the CBA delineates several steps "to resolve any difference[s]," culminating in an arbitration proceeding. R. 9-5, Page ID # 87. Plaintiffs took advantage of the grievance procedures, including pursuing arbitration, and they lost. Additionally, Teamsters Local 214 previously filed an unfair-labor-practice charge against DPS before MERC. ALJ Order, R. 44-1, Page ID # 634. The process outlined in the CBA and the process provided by the state of Michigan were adequate because those proceedings gave plaintiffs a meaningful opportunity to challenge DPS's actions. And even beyond these proceedings, plaintiffs were able to bring a related hybrid LMRA action in the Michigan courts, and plaintiffs could have brought a breach of contract claim in the state courts. Plaintiffs could hardly ask for a more thorough panoply of avenues to bring their claims.

Plaintiffs attempt to rebut the process they have been afforded by stating that they were effectively excluded from any participation in their grievance procedure; however, the complaint fails to raise any issue of how the post-deprivation processes afforded them—including administrative review, arbitration,

---

[3]Though we do not reach the issue of whether plaintiffs had a legitimate claim of entitlement, we briefly address two related issues with plaintiffs' claim. First, the ALJ, arbitrator, and district judge all concluded that plaintiffs' due process property claims were barred by PERA's provision that states a public employer cannot bargain with a bargaining representative of its employees over the right to contract noninstructional support services to third parties. The decisions of the ALJ, arbitrator, and district judge seem well reasoned to us, and therefore, if we were to reach the issue, we would likely come to the same conclusion. Second, we have significant concerns that plaintiffs are collaterally estopped from bringing their due process property claims. The arbitrator considered a due process deprivation of property claim brought by plaintiffs, and denied the requested relief. Whether an arbitrator's decision should be given preclusive effect is a difficult question, but when, as here, the same party raises the same claim against the same counter-party, issue preclusion seems a likely outcome. *See* Charles Allan Wright and Arthur R. Miller, 18B *Fed. Prac. & Proc.* § 4475.1 (2d ed. 2012). However, because it is clear that plaintiffs were afforded due process, we do not conduct an in-depth analysis of these two related issues.

the related state court action—were insufficient or inadequate safeguards to satisfy due process. *Jefferson*, 360 F.3d at 588. Plaintiffs' complaint alleges the union rejected their proposed grievances and filed a "substantially different grievance," which raised different issues and sought "more limited relief." R-36, Page ID # 467. Plaintiffs do not allege any facts about what these "different issues" are or how the current matter is distinguishable from the issues presented during the arbitration.

Therefore, plaintiffs' complaint does not allege facts demonstrating a viable due process claim for deprivation of property, and plaintiffs' deprivation of property claim fails as a matter of law. We move now to plaintiffs' deprivation of liberty claim.

### B. Count II: Deprivation of Liberty

Plaintiffs' second cause of action alleges that DPS "deprived . . . them of their liberty without due process of law in violation of rights protected by the 14th Amendment." The Supreme Court has recognized a liberty interest "where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." *Roth*, 408 U.S. at 573. *See also Med. Corp., Inc. v. City of Lima*, 296 F.3d 404, 413-14 (6th Cir. 2002). Injury to reputation alone is not sufficient to create a constitutionally protected liberty interest, however. *Paul v. Davis*, 424 U.S. 693, 701 (1976). Instead, a plaintiff must demonstrate a stigmatizing government action "which so negatively affects his or her reputation that it effectively forecloses the opportunity to practice a chosen profession." *Joelson v. United States*, 86 F.3d 1413, 1420 (6th Cir. 1996). In such a case, due process would afford an opportunity for the person to respond to the government's charges and would give the person a name-clearing hearing. *Roth*, 408 U.S. at 573.

- 11 -

In order to establish a deprivation of a liberty interest in one's reputation, a plaintiff must satisfy five elements[4]: (1)The stigmatizing statements must be made in conjunction with the plaintiff's termination from employment. *Ludwig v. Bd. of Trustees of Ferris State Univ.*, 123 F.3d 404, 410 (6th Cir. 1997). (2) The statements must be more than mere allegations of improper or inadequate performance, incompetence, neglect of duty, or malfeasance. *Id.* The statements must be "so charged with a moral stigma such as immorality or dishonesty" that they foreclose the plaintiff from seeking alternate employment. *Baar v. Jefferson Cnty. Bd. of Educ.*, 311 F. App'x 817, 826 (6th Cir. 2009) (quoting *Ludwig*, 123 F.3d at 410). *See also Martin v. City of Glasgow*, No. 1:11-cv-0064-R, 2012 WL 3060383, at *11 (W.D. Ky. July 26, 2012) (finding there was no violation of a protected-liberty interest because police department press release did not "bear[] upon the [plaintiff's] immorality or dishonesty). "A charge that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not constitute a liberty deprivation." *Chilingirian v. Boris*, 882 F.2d 200, 205 n.8 (6th Cir. 1989). (3) The statements must be made public. *Ludwig*, 123 F.3d at 410. (4) The plaintiff must claim that the charges made against him were false. *Id.* Finally, (5) the public dissemination must have been voluntary. *Id.*

Plaintiffs claim that the online article DPS posted in November 2010 violated their liberty interests. R. 36, Page ID # 466-67. However, their claim fails as a matter of law because they cannot establish the second *Ludwig* factor. DPS's press release, citing general problems with absenteeism, was not so charged with a moral stigma as to foreclose plaintiffs from seeking alternate employment. Accepting as true all

---

[4]Despite plaintiffs' arguments to the contrary, "a plaintiff *must* show [the existence of all five factors] in order to establish that he was deprived of a liberty interest." *Quinn v. Shirley*, 293 F.3d 315, 320 (6th Cir. 2002) (emphasis added). Only after a plaintiff has established the existence of all five elements is he entitled to a name-clearing hearing. *Id.*

factual allegations in plaintiffs' complaint, plaintiffs fail to establish that the generalized claims of absenteeism fall outside the umbrella of improper or inadequate performance, incompetence, neglect of duty, or malfeasance. *Lake Mich. Coll. Fed. of Teachers v. Lake Mich. Cmty. Coll.*, 518 F.2d 1091, 1097 (6th Cir. 1975) (holding that requisite stigma requires a charge of mental illness, fraud, untruthfulness, or the like). If a police department press release that informed the general public of the specific name and possible criminal activities of a police officer was insufficient to show immorality or dishonesty, *see Martin*, 2012 WL 3060383, at *3, then a press release containing a general charge of absenteeism that does not name *any* individual is insufficient to show the requisite stigma. Therefore, the DPS statements did not violate plaintiffs' liberty interests.

Undermining plaintiffs' liberty interest claim even further, plaintiffs failed to allege who was injured with any degree of specificity. They allege that "[n]one of the officers who were purportedly guilty of attendance abuses were ever identified," but this fails to state a claim for relief. R. 1, Page ID # 5. When a plaintiff claims that he was denied his liberty interest without due process of law, the remedy is "to provide the person an opportunity to clear his name." *Codd v. Velger*, 429 U.S. 624, 628 (1977). Without identifying the specific person, however, the remedy cannot be afforded. Therefore, plaintiffs have failed to plead a viable liberty interest claim, and the district court properly granted judgment on the pleadings.

## IV. CONCLUSION

Accepting all factual allegations as true, plaintiffs fail to state a viable claim for relief. Therefore, the district court's grant of judgment on the pleadings is **AFFIRMED**.